2256 Nobel Biocare v. Instradent USA, Inc. Good morning, your honors, and may it please the court. There was a fundamental lack of evidence that the alleged prior art catalog was publicly accessible before the critical date. Not just no substantial evidence here, but no evidence of all that the catalog that that particular catalog was present at the 2003 IDS show. One person said he brought it back, and the other person said he received it, and there were notes by that second person. Don't they all corroborate each other? No, your honor, because there's some fundamental gaps in that testimony. The person that went back to the show, Mr. Shakir, said that he did not actually recall seeing the catalog. In fact, he did not recall actually going to the booth of Alpha Biotech, where the catalog was supposedly publicly accessible. Instead, what he said in his declaration was that it was their practice generally to go to these shows and pick up these kind of catalogs. How else did it get back? There were a number of other trade shows that both of the witnesses testified, Shakir and Hantman, that they went to regularly. Hantman went to shows in Israel, Shakir went to international shows. In March or April of 2003? Well, some of them were after that. There was a Greater New York show that was in the fall of 2003, and Shakir testified that without exception, his words, without exception, Alpha Biotech was exhibiting at those other shows. Also, Dr. Framovich- Wait a minute. Didn't Mr. Hantman testify that Shakir brought him back a copy of that? I'm sorry, I don't have the site in front of me. Correct. That was his testimony, but that's uncorroborated, your honor. There's no documents. There was a handwritten notation on the cover of the catalog, but that was admittedly unrelated to either Shakir or this IDS conference or to a date. There's no date. What is your view, the necessary corroboration for this would have been that Shakir would have been able to say, yes, I recall distinctively that 18 years ago, I brought back this particular catalog? That would have been the foundation, certainly. That would have been the oral testimony. Then there should, on top of that, there should be some written corroboration. The law says that we look at this oral testimony with disfavor. It's presumptively unreliable. There should have been a- What in the normal course of business dealings or personal dealings does one keep a paper record of receiving a catalog, giving it to someone else for 18 years? Do you think in the normal course of business, you record all of these transactions? Two responses to that, your honor. One is, Hantman said that he kept an index of the catalogs that he had in his library, but that index didn't contain this level of detail in terms of when he got it. Okay, so that goes to my question of what level of detail do we have an expectation that people keep records of in the normal course of business? You're asking for a little too much, aren't you? I mean, I understand the more corroboration, the better, but- Well, number one, it's instrudent's burden on this. As I mentioned, there's a long history of case law requiring written corroboration. The oral testimony is insufficient. There's a good policy reason for that. A valuable patent right has been extinguished based on recollections from 15 years ago where there are large gaps between the recollections- A person's oral testimony needs corroboration, but cannot someone else's oral testimony corroborate the first person's testimony? Your Honor, we're not aware of any authority, nor has instrudent cited any authority where solely two witnesses' oral testimony- Or any contrary authority? Well, we think that the Finnegan case is quite helpful where it said as a matter of law that the oral testimony was insufficient there with a single witness situation. Right. One witness without more is not good enough to prove up a certain fact. Here we have two witnesses. We have the date on the cover of the ABT catalog saying March 2003. We also have Dr. Frommovich's testimony indicating that everybody knew that the 2003 IDS conference in Germany was one of the main events of the year and he was looking to get a catalog ready for that. Then there's some other evidence in the record that a catalog was prepared before March 2003. I guess what I'm wondering is, is it really fair to say that everything that's going on here is not corroborated when we have data points here and there that perhaps collectively under totality of the circumstances inquiry, it's fair and reasonable to conclude that there is a reasonable inference that this catalog was in fact at the 2003 conference? Your Honor, my response there is that when we look at the testimony from Hantman and Shakir, it doesn't overlap. They don't corroborate each other in that Hantman's not at the IDS conference. He doesn't have any testimony of what happened there. Shakir doesn't have any recollection here. I guess he does have some recollection, which is that he never goes to these particular booths to pick up catalogs of this particular nature. Because for him, it's not of interest to him, but he does remember Hantman asking him for this particular conference to go sweep up all of the catalogs for this particular category of technology. Hantman specifically recalls that he couldn't make it to this particular conference of all the conferences over the past several years. He specifically asked Shakir to sweep everything up, particularly because he was interested in what Framovich was up to. I think the gap then follows from that, which is that if the catalog were at this particular conference and if it were being displayed in a publicly accessible manner, about all we have from the witnesses is that if it were there, I would have picked it up, as opposed to the fundamental issue is it was there and it was publicly accessible. But they have the smoking gun. They have the catalog in their possession. Well, there's always the document that's allegedly the prior art. Otherwise, we wouldn't even be talking about an anticipation. And I don't recall Framovich ever saying that the catalog was distributed or available at any conference post-March 2003 IDS conference. Is that fair to say? I disagree, Your Honor. Where did he say that it was at some conference post-March 2003? What Dr. Framovich said is that he was using it as a teaching aid, and that was in fact the main purpose of this. It was used as a teaching aid for clinicians that he was training how to use his implants and his surgical procedure. We've got that at the appendix at 3477-78. And so there were dentists throughout Israel who were receiving this catalog in these events where, again, no established date that that was pre-critical date. So in addition to that, there's also testimony by Shakir that he's going to these other So that's really establishing that there's other opportunities for this catalog to have turned over. And back to the issue of the specific recollection that Shakir is saying, I only picked up the implant catalogs at this particular show. I think if we look closely at the declaration from Shakir, it really undermines that argument that during the years I attended the IDS show, I would collect competitor materials, bring them back for review. I would pass on to Mr. Hantman for review materials relating to competitors' dental implants. So he's saying for years he's gathering dental implant materials. It's not just the one show. And then when he talks about the one specific show in paragraph 5 of his declaration, next page 3412, I attended the 2003 IDS show, because Hantman was unable, quote, per our practice, I collected catalogs and other materials from competitors, especially the booths of Israeli companies. So this was not just happening at this 2003 IDS conference. This was a regular practice. And nonetheless, there were many other opportunities where this could have been collected. And the fact that the focus shifted in the argument towards could the catalog have been... But it's not about practice. It's about the catalog. And the catalog did get back to Hantman, right? Certainly there was a catalog in Hantman's possession, but the touchstone of... The catalog... The purported reference. I'm going to make two points on that, Your Honor. One is, number one, Shakir didn't remember seeing the catalog until he was asked to sign his declaration. And he specifically said at appendix 5827, the first time he saw it was in Hantman's possession. He said, did you ask me? And I say, no. No. That's it. 5827. So the fact that that catalog got there in and of itself is not enough. There's strong policy in favor of this corroboration requirement, and essentially what we have is a circular argument from Instredent, which is that if the catalog were there, they would have picked it up with no one who remembers it and no one who has any kind of documentation. And the burden is theirs, even though it was a long time ago that this catalog... I understand it was their burden, but in the end it was your catalog, your side's catalog. And for whatever reason, your side was unable to come up with anything as to the I mean, is there a reason why that's so? That whenever they ask for discovery, there turned out to be nothing available? I think the answer to that is that in 2003, Alpha Biotech was a small operation. Dr. Framovich testified he was wearing many hats. He was running this business out of a small apartment at the back of his dental clinic. And the record keeping certainly isn't what you'd expect from a large organization as it was 20 years ago. And if there's a coin toss here, the burden is theirs, and the high standard on corroboration is something that is there to protect the patent owners from witnesses who would like to challenge patents like this. Can I just get, I think you fairly made the, or didn't make the argument in your brief, that there's no dispute, is there, that the ITC, the earlier proceeding, or our affirmance of their decision has any effect on our current adjudication? Not binding, but we certainly think the court should come to the same result. They had a different record, and they had a different standard of review. So yeah, anything might be persuasive at some level, but there's not much, right? Well, I think it's instructive for two reasons. One is our view is that the evidence just isn't there, period. And we're not in that zone between preponderance and clear and convincing, number one. Number two, given the years of litigation and given the access to the discovery process that Incident had and the fact that supposedly thousands of people were at this IDS conference, that this was the best that they could come up with, these two witnesses who can't match up, and they presented that not only late in the overall litigation, but late in this IPR process as well. And if this were handed out freely at this conference, there would be some more evidence.  Good morning, Your Honors. May it please the court. This court's precedent on public accessibility makes clear that actual retrieval of a publication is not even a requirement for public accessibility. But here, we've gone above and beyond that. We have actual retrieval. We have the actual catalog. This is the actual catalog. I'm not sure what you're saying. If we did not have the actual catalog here, and we have the statements in the record from Shakir and the other witness, you're not suggesting that would come close to being enough, right? Yeah, that is definitely not this case. It would be a completely different scenario if, for example, Mr. Shakir or Mr. Hantman had testified that, oh, I walked by the Alpha Bio booth in 2003 and I saw the catalog there, and that was the only testimony that we have. As this court's precedent makes clear, testimony of one witness that's not corroborated is not enough. Here we do have testimony from Mr. Hantman and Mr. Shakir that literally fits together hand in glove. Mr. Hantman testified and said in his declaration that he could not attend the 2003 IDS for personal reasons. So he asked Mr. Shakir to pick up all the dental implant catalogs that Mr. Shakir could find at that conference. This was a unique circumstance. Mr. Shakir, in his deposition, he was deposed for about seven hours on approximately a three-page declaration and asked multiple times about when would he pick up dental implant catalogs, and he was adamant every single time that the only opportunity that he did that was when Mr. Hantman asked him to for the 2003 IDS. Well, then can you respond to what Mr. Skanga pointed out, where apparently Mr. Shakir talked about how it was his practice to pick up catalogs, including from booths promoting dental implants. Sure, and in his declaration, he does talk about picking up catalogs at these conferences. It's undisputed. He and Mr. Hantman both attended many conferences. As a practice, not just as a one-timer. Sure, but both in the declaration and in his deposition, he made that clear that when it came to dental implants, that was not his part of the business. He said multiple times in his deposition that he didn't care about the dental implants unless Mr. Hantman asked him to pick up catalogs for dental implants, which only happened once at the March 2003 IDS. What was his part of the business if it wasn't dental implants? His part, I quite honestly can't remember. I know that the business name was something like Shakir Implants, but I don't quite honestly recall what his deposition testimony was on what was part of the business. There were other aspects of this dental implant business, since it was a dentistry business, including x-rays and things like that, that was his role. He was adamant that Mr. Hantman was the one who actually dealt with the dental implants. This was a unique circumstance where Mr. Shakir was asked to pick up these catalogs. It doesn't matter that he doesn't specifically remember the Alpha Bio booth. It appeals to common sense that you wouldn't remember every specific booth that you visited 15 years ago. But the testimony is clear that he picked up a stack of catalogs on dental implants, handed them to Mr. Hantman, and then Mr. Hantman's testimony and his declaration is clear that he was particularly interested in this specific catalog, the Alpha Bio catalog. He had heard about the SPI implant and he wanted to know more about it, and that is one of the reasons why he asked Mr. Shakir to go to the conference and pick up all these catalogs. Upon receiving the stack of catalogs, Mr. Hantman testified that he looked at the Alpha Bio catalog and looked at the SPI implant. He testified about the various handwriting that's both on the front cover and within the catalog. He testified that some of that handwriting was done at a meeting that happened just a few weeks after the conference. This testimony between Mr. Hantman and Mr. Shakir really fits together hand in glove. It's also corroborated by Dr. Fromovitch's testimony. Dr. Fromovitch, while admittedly he didn't remember a lot of things, he did remember that he attended the 2003 IDS and he operated a booth there. He testified that the March 2003 date that is prominently on the front cover of the catalog was put there in advance of the March 2003 IDS. He testified that he distributed this catalog, made it available to people that were doing training sessions with him throughout 2003. We also have documentation from the Alpha Bio website that says that there's a catalog online. That website from the Internet Archive was in early April of 2003, so just after this March 2003 IDS. We don't know what catalog that was, though. The board specifically authorized discovery into all catalogs that would have been made available with this catalog online designation on the Alpha Bio website between early 2003 and the critical date. In response to that, no documents were produced. The only catalog that we have from that time frame or before is this March 2003 catalog. That's something that the board considered. It didn't say, obviously, that that was dispositive, just like it didn't say that the March 2003 date on the catalog was dispositive, but it was one of the many factors, one of the many facts that the board considered in coming to its determination that this was publicly accessible at the March 2003 IDS. What is your response to Mr. Skanga's argument that oral testimony needs corroboration? I agree that oral testimony of a single witness does need corroboration. We disagree that the evidence of corroboration needs to be written. This court made clear in the trans web case that's cited in our brief that evidence of corroboration can be oral, can be written, can even be circumstantial evidence. And here we have all three. We have the oral testimony of Mr. Hantman, Mr. Chakir, and Dr. Frumovich. We have documentation. We have the actual catalog that's been sitting in Mr. Hantman's files for the past 15 years. We have also documentation of the catalog online designation on the website, and we have circumstantial evidence about Dr. Frumovich preparing for the IDS, making this catalog in preparation for that conference, and Dr. Frumovich making the catalog available to people who had training courses that were held with him. So we have literally all three types of corroborating evidence, which the board considered in full, and under the substantial evidence standard, we would submit that any reasonable fact finder would come to the same conclusion that the board did, that this, under preponderance of the evidence, this catalog was publicly accessible at the March 2003 IDS. I'd like to discuss the claim construction argument for a few moments, since I won't have the opportunity to get up again, and it wasn't discussed in the first part of this argument. I think you're going to discuss frustroconical? Frustroconical, yes, a coronal region having a frustroconical shape. The patent specification, the board considered all of the evidence, including, most importantly, the claims themselves and the patent specification. Nobel BioCare has made the argument a number of times, both before the ITC, before the administrative law judge, the commission in the ITC, and the board here numerous times, that the coronal region having a frustroconical shape means that the entire coronal region needs to be frustroconical. Both the claims and the patent specification dictate otherwise. The inventors knew how to specify that an entire region must have some characteristic. If you look at claim nine of the patent, the inventors in that claim state entire threaded region. They don't say that in claim one. Also, if you look at the specification, as the board acknowledged, figures eight and nine in the specification disclose coronal regions that are only partially frustroconical. In response, Nobel BioCare is essentially making the argument that, well, when we said having, we didn't really mean having. We meant something else. But this court's decision from back in 2000 in LAMPE, as well as the MPEP, have stated for multiple decades that when you use the term having, it's a transitional term that could mean comprising, could mean consisting of, and you need to look at the context of both the claims and the specification to determine what is appropriate. Here the board did that, and there's nothing, there's no clear teaching in the specification that this claim term was somehow limited to a single embodiment in figure 12. I'd also note that going back for a second to the public accessibility inquiry, one of the arguments that was made by Nobel BioCare in the brief was basically that these two individuals are lying because they are, because Mr. Hantman now works for a competitor, that the board considered that, and the board rejected that proposition. The board rejected the proposition that at any of these other trade shows that Mr. Hantman and Mr. Chakir attended, that they would have picked up this particular catalog. In fact, I think as Judge Chen, you pointed out, there is no evidence from Nobel BioCare that this particular catalog was brought to any of those other trade shows. So the testimony here is crystal clear. Mr. Hantman asked Mr. Chakir to pick these things up. Mr. Chakir did what Mr. Hantman asked, gave them to Mr. Hantman, and Mr. Hantman then kept this catalog in his files. This is a five-day-long conference in March of 2003. It's undisputed that thousands of people attended this particular trade show. As this court has made clear as recently as the GoPro decision just from, I think, within the last couple of weeks, trade shows are a great place to find out information about products, including through the use of product catalogs. So I assume your view would be with respect to the ITC proceeding, given that we affirmed sort of the opposite conclusion in that case, that has nothing to do with this and no effect on this, except perhaps the claim construction, which you're arguing, which was the same, right? Your view was. Right, right. The claim construction was the same, yes. The ITC had previously determined under the Phillips standard, a narrower standard, that the coronal region having a frustaconical shape need not be entirely frustaconical. Was it the ITC or the ITC-ALJ that had that claim construction? It was both the ALJ and then also the commission itself. So even though the commission found that this catalog was not a prior art reference, it went ahead and reviewed the claim construction issue? Yes, I believe that that was one of the, it was one of the number, I think there were three or four different issues that the commission told the parties, we want additional briefing on these particular issues, and one of them was the claim construction issue. So yes, at least when it comes to the catalog and the public accessibility, we believe that the ITC's decision and this court's upholding that decision is not of consequence here, because both of the different standard preponderance of the evidence versus clear and convincing, as well as a substantially different record, because in that proceeding we didn't have the testimony from Mr. Chakir, we didn't have the testimony from Mr. Hantman, we also didn't have at that time the catalog online designation that was on Alpha Bio's website. So yes, that we agree with Chief Judge Prose, this is not, that decision does not dictate a decision here, nor should it. And unless the panel has any other questions, thank you very much. So what I did not hear from my friend here was any evidence of record that there was anyone who saw this catalog at the 2003 show, or anyone who could describe the circumstances under which allegedly the catalog was there. There are no eyewitnesses, and that's something that all these cases dealing with trade shows all have. And oral testimony from two witnesses here, to put that in perspective, this court in the Woodland case found six witnesses insufficient. In the Barb Dwyer case, the Supreme Court found 24 witnesses insufficient. We're lacking the basic corroboration from the documents, and the witnesses have a fundamental gap. As to the issue of there being some specific recollection of this particular catalog, I want to point to the Exhibit E here to Mr. Hantman's declaration, which has a whole collection of Alpha Biotech catalogs spread out like a deck of cards here. This is at 3396. These are all other catalogs that were in his files. He had no particular recollection as to how or when he came into possession of these. This kind of highlights why we need some more corroboration here. It's very unusual that he plucked out this one 2003 catalog and is able to say, oh yeah, this one, I remember how it ended up in my catalog without the rest of these. With respect to the catalog online, I think this court's recent decision in Apatow is instructive on that. It's not enough for the witness to say, oh, I remember I got a dated email with an uncertain attachment, but take my word for it, this attachment was the thing that was attached to the email. That's kind of what we have here. Take my word for it that this is the catalog that Shakir brought back to me. Take my word for it that this is the catalog that must have been online. Not enough to meet this high standard. They're burden of proof. They're burden on corroboration. If there's no other questions, that'll be it for me. Thank you. We thank both sides.